UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TINA LAURAY AND LAWRENCE LAURAY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 1:16-cv-00929-DML-SEB<br>)<br>) |
| MENARD, INC., | )<br>) |
| Defendant. | ) |

## Order on Defendant's Motion for Summary Judgment (Dkt. 35)

This is a negligence case based on premises liability. The plaintiffs, Tina Lauray and Lawrence Lauray, had been shopping at a store owned by the defendant Menard, Inc. ("Menard") in Avon, Indiana. As the Laurays were leaving the store, Ms. Lauray tripped and fell on a mat near the store's exit, sustaining injuries. The Laurays sued Menard and Menard filed a motion for summary judgment (dkt. 35). The parties have consented to have the undersigned Magistrate Judge conduct all further proceedings in this matter. For the reasons that follow, Menard's motion is DENIED.

### Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact must be "material," which means that it might affect the outcome of the case under the applicable substantive law. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts do not preclude summary judgment. *Id.* A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. The court views the evidence in the record and draws all reasonable inferences from that evidence in the light most favorable to the nonmoving party. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th 2018).

## **Factual Background**

On March 15, 2015, Tina and Lawrence Lauray visited the Menard store in Avon, Indiana to shop for bathtubs. Because it was raining that day, Menard store personnel had placed three mats adjacent to the store exit for the safety of guests entering and exiting the building, which had tile floors. The mats are made of coarse carpet and have rubber bottoms to keep them in place. Menard's employees straighten out the mats as needed throughout the day to ensure there are no wrinkles, bumps, or bulges in the mats.

Video surveillance appears to show that Mr. Lauray pulled the edge of the mat up with his foot or his cart, and then Ms. Lauray, who was walking slightly behind him, tripped on the turned-up edge. Ms. Lauray testified that "[w]e were walking toward the exit, and I just remember falling. I was reaching for the cart, and it happened so fast that I just fell." (Dkt 37-1 at ECF p. 3, Ms. Lauray Dep. at 11). At her deposition Ms. Lauray was asked, "Did you feel anything that would have been the cause for your fall, or you just started falling, and that's what you

noticed?" She answered, "That's what I remember." (Dkt. 37-1 at ECF pp. 3–4, Ms. Lauray Dep. at 11–12).

Neither plaintiff noticed anything unusual about the mat before the fall. Mr. Lauray did not even notice the mat until after his wife had fallen. However, after the fall, he noticed that the ends of the mat appeared "rolled, wavy." (Dkt. 37-5 at ECF p. 2, Mr. Lauray Dep. at 5). He explained he meant "the edge was rolled" and it wasn't laying flat; he added that it looked older as compared to the other two mats on the floor with it. (Dkt. 37-5 at ECF pp. 2–3, Mr. Lauray Dep. at 5–6).

Menard's head cashier at the time, Breanne Reimer, was standing by the door just a few feet away from the mat to assist customers at the registers and those exiting the store until about one minute before Ms. Lauray fell. Ms. Reimer stated in her affidavit that the mat was not frayed, curled, or defective in any way. (Dkt. 37-3 at ECF p. 1, Reimer Aff. ¶ 9).

Ms. Reimer testified that sometimes customers' shoes or carts would catch on the mats and bunch them up or overturn them. (Dkt. 62-1 at ECF pp. 8, 9, Reimer Dep. at 28, 29). She agreed that it was "general knowledge" that the mats could pull up as the carts were going over them but added that the issue with the mats "wasn't something that occurred often." (Dkt. 62-1 at ECF pp. 10–11, Reimer Dep. at 30, 34). Before Ms. Lauray's fall, Ms. Reimer had seen carts bunch up the mats (Dkt. 64-4 at ECF p. 2, Reimer Dep. 32) and had seen the mats buckle, sometimes just from people walking over them. (Dkt. 62-1 at ECF pp. 25–26, Reimer Dep. at 82–83). Ms. Reimer said it was not unusual to see a mat flip up as a person walked

3

across it.  (Dkt. 64-4 at ECF p. 4, Reimer Dep. 106).  Ms. Reimer testified that while working at Menard she has seen people other than Ms. Lauray trip or stumble over the mats at the exits.  (Dkt. 62-1 at ECF p. 24, Reimer Dep. at 81).  It had happened more than once, but Ms. Reimer could not specify how often it had occurred.  (*Id.* at ECF p. 25, Reimer Dep. at 82).  Ms. Reimer "most likely" had seen people stumble on the mat before Ms. Lauray's fall.  (*Id.*)  Similarly, Menard's manager Dustina Lear testified that the head cashier and carry-out employees were aware that people could kick the mat, roll over it with a cart, or cause it to move.  (Dkt. 62-3 at ECF p. 10, Lear Dep. at 34).

Ms. Reimer testified that every Menard employee had a duty to keep an eye out for customer safety issues as they arose and to correct any issues when they became aware of them.  (Dkt. 62-1 at ECF pp. 6–7, Reimer Dep. at 24, 27).  In particular, she stated that every employee had a duty to watch for the mats at the entrance and exit bunching up, getting caught in the door, or just moving about the floor.  (Dkt. 62-1 at ECF pp. 8, 9, Reimer Dep. at 28, 29).  If an employee noticed that a mat had bunched up or pulled up, according to Ms. Reimer, he or she was supposed to straighten it back out.  (Dkt. 62-1 at ECF p. 19, Reimer Dep. at 67).  Similarly, Ms. Lear stated that managers, head cashiers, and other employees were responsible for ensuring that the mats were "down flat" and not "curled up" or "flipped over"; these employees had to make sure that people didn't kick up the mats with their feet or with a cart.  (Dkt. 62-3 at ECF p. 8, Lear Dep. at 32; see also Dkt. 62-3 at ECF p. 11, Lear Dep. at 35 (stating that head cashiers were supposed

4

to watch for any issues with the mats and correct any that arose throughout their shifts)).

Menard has not disputed that Ms. Lauray sustained injuries as a result of her fall at its store.

## Analysis

In moving for summary judgment, Menard argues that the Laurays have failed to present evidence to raise an inference that its premises were defective. Menard also argues that they have no evidence that any defect in the mat caused Ms. Lauray's fall. Further, Menard maintains that Mr. Lauray, by picking up the edge of the mat with either his foot or cart, caused his wife to fall.

Because the court is exercising diversity jurisdiction in this matter, its duty "is to decide issues of Indiana state law" as it predicts "the Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). This is a negligence action based on premises liability. Under Indiana law, the essential elements for a negligence action are (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by the breach. *Sturgis v. Silvers*, No. 1:15-cv-00738-JMS-MJD, 2017 WL 4922734, at *4 (S.D. Ind. Oct. 31, 2017) (quoting *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014)). "'[N]egligence cannot be inferred from the mere fact of an accident' nor may it 'be established through inferential speculation alone.'" *Turner v. Menard, Inc.*, No. 2:12-cv-490, 2016 WL 1298126, at *2 (N.D. Ind. Mar. 31, 2016) (quoting *Hale v. Community Hosp. of Indianapolis, Inc.*, 567 N.E.2d 842, 843 (Ind. Ct. App. 1991)).

Negligence cases are "particularly fact sensitive" and are governed by the "objective reasonable person" standard; therefore, summary judgment is "rarely appropriate" in such cases. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004) (finding genuine issues of material fact on all elements of negligence claim and reversing grant of summary judgment); *see also Turner*, 2016 WL 1298126, at *2. However, "when the undisputed material facts negate at least one element" of the negligence claim, summary judgment may be granted the defendant. *Id.*

Whether a duty exists is a question of law to be decided by the court. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 394 (Ind. 2016). Under Indiana law, "a landowner must exercise reasonable care for [an] invitee's protection while the invitee is on the premises." *Doermer*, 63 N.E.3d at 320. The parties do not dispute that the Laurays were invitees on Menard's premises. The Indiana Supreme Court has adopted the *Restatement (Second) of Torts § 343* as the "best definition" of the duty a landowner owes to an invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind. 1991) (quoting the *Restatement (Second) of Torts § 343*). The Indiana Supreme Court has reiterated that "[w]hen a physical injury occurs as a result of a condition on the land, the three elements

6

described in Restatement (Second) of Torts section 343 accurately describe the landowner-invitee duty." *Rogers v. Martin*, 63 N.E.3d 316, 322–23 (Ind. 2016).

Menard first argues that the plaintiffs cannot establish the cause of Ms. Lauray's fall. Menard likens this case to *Ogden Estate v. Decatur County Hospital*, 509 N.E.2d 901 (Ind. Ct. App. 1987). In that case, a hospital visitor, Charles Ogden, went into a restroom and was later found lying on the restroom floor. He died from his injuries. The estate sued the hospital, claiming that it negligently caused Ogden's death because the restroom floor allegedly was slick. The hospital moved for summary judgment. *Id.* at 901–02. The estate alleged that the hospital employees failed to mop the floor properly, making it slick and causing Ogden to slip and fall. However, five witnesses testified that they were in the restroom before and after Ogden was found on the floor and stated the floor was not wet or slippery, and nothing was on the floor that would make it slick. *Id.* at 903. A witness testified that she had not mopped the floor, and her testimony was in accord with hospital policy not to mop the floor on weekends and holidays. (Ogden fell on July 4.) The trial court granted the hospital summary judgment because the estate had no evidence to establish that the floor was slick or slippery. The court of appeals affirmed, concluding that a finding of negligence would be based on only "inferential speculation." *Id.* at 903–04.

This case is not at all like *Ogden*: a finding of negligence by Menard need not be based on "inferential speculation" alone. Rather, the Laurays have identified,

7

with evidence, a defect in the premises and the cause of Ms. Lauray's fall, namely Mr. Lauray's testimony and the testimony of several Menard employees.

Though Ms. Lauray herself could not at the moment of her fall identify its cause, other evidence of the cause has been presented. Menard employees have identified the object that may have caused Ms. Lauray's fall: They have testified that Mr. Lauray was pushing a cart that bunched up the mat that then caused Ms. Lauray's fall. (Dkt. 37-2 at ECF p. 2, ¶ 14, Dustina Lear Aff. ¶ 14; Dkt. 62-1 at ECF p. 15, Reimer Dep. at 44 (stating she saw Mr. Lauray pushing the cart and he walked over the mat and the mat "bunched up and she [Ms. Lauray] fell"); Dkt. 62-3 at ECF pp. 6–7, Dustina Lear Dep. at 8–9 (stating that as the Laurays were "walking out the door, the cart hit the rug and pushed it up and she fell")). Ms. Reimer testified she saw the mat edge roll up and it appeared that Ms. Lauray "caught her foot" on the mat. (Dkt. 62-1 at ECF p. 15, Reimer Dep. at 44). Ms. Lear stated that she remembers the Laurays walking out, Mr. Lauray was pushing the cart, and when "the cart wheel hit the rug, flipped it, pulled it up, and I remember her falling." (Dkt. 62-3 at ECF p. 14, Lear Dep. at 50). When Ms. Lear was asked if Mr. Lauray did anything to cause the mat to flip, she answered, "Just pushing the cart." (*Id.*) And Mr. Lauray testified that after his wife's fall, he noticed that the ends of the mat "were rolled, wavy. They weren't laying flat." (Dkt. 37-5 at ECF p. 2–3, Lawrence Lauray Dep. at 5–6). Ms. Reimer testified that after Mr. Lauray caused the mat to fold up, she straightened it out. (Dkt. 62-1 at ECF p. 21, Reimer

Dep. at 76). Thus, specific evidence in the record would support a finding that a condition on Menard's premises—the mat—caused Ms. Lauray's fall.

Menard also seeks summary judgment on the ground that the evidence establishes it did not have knowledge of an alleged defect. More specifically, Menard submits that the plaintiffs cannot demonstrate it had actual or constructive knowledge of the allegedly frayed or defective mat near the exit. The plaintiffs respond that Menard had actual knowledge that the mats could bunch, buckle, flip, or otherwise cause a tripping hazard.

A landowner is not an insurer of its invitees' safety. *See Rogers*, 63 N.E.3d at 324; *see also Sturgis*, 2017 WL 4922734, at *10. The duty of care owed by a landowner to an invitee "'is a known or should have known standard.'" *Sturgis*, 2017 WL 4922734, at *10 (quoting *Wellington Green Homeowners' Ass'n v. Parsons*, 768 N.E.2d 923, 929 (Ind. Ct. App. 2002)). "Indiana courts have found that '[t]here is constructive knowledge when a condition has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented the injury if the invitor had used ordinary care.'" *Sturgis*, 2017 WL 4922734, at *10 (quoting *Gasser Chair Co. v. Nordengreen*, 991 N.E.2d 122, 126–27 (Ind. Ct. App. 2013)).

Menard focuses on its employees' knowledge that the *particular* mat on which Ms. Lauray tripped was "not frayed, curled, or defective in any way." It argues that because the mat was pulled up only seconds before her fall, it was impossible for any of its employees to correct the mat to prevent the fall. Menard submits that

9

there was not sufficient time—less than one minute—for it to have discovered the mat's allegedly defective condition in time to prevent the injury to Ms. Lauray. The cases Menard cites support that argument, but that argument doesn't fully address the Laurays' claims and the evidence presented.

In *Turner v. Menard*, 2016 WL 1298126, at *5, the court held that the store did not have constructive notice of salt pellets on the floor that caused the plaintiff to fall. The court noted significant evidence that could lead a reasonable jury to infer that another customer who had been loading bags of salt into his cart minutes before had spilled salt pellets on the floor, causing the plaintiff's fall. No evidence presented in that case could have supported an inference that the salt had been there before that, so that inference would have been based entirely on speculation. And in *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1145 (Ind. Ct. App. 2012), the Indiana Court of Appeals held that a store did not have constructive knowledge of the hazardous condition—liquid on the floor that caused the plaintiff to slip—where the evidence established that ten minutes before the fall, the floor was clean and dry and ten minutes was not enough time for the store to discover the liquid and prevent the injury if the store used ordinary care. *See also Sturgis*, 2017 WL 4922734, at *10 (discussing constructive knowledge).

The problem with Menard's argument is that it is premised on a too-narrow identification of the defective condition as to which the Laurays maintain it had knowledge. If the court were considering only the particular "bunch up" in the mat that tripped Ms. Lauray, it would conclude as a matter of law that there was not

10

enough time for Menard to have had constructive notice of the defective condition. But the particular bunch up in the mat that caused Ms. Lauray to fall is not the only consideration in determining whether Menard had notice of a defective condition. The Laurays assert that Menard had notice of a defective condition with the mats generally. They contend that Menard had knowledge of the danger created by the unsecured mats because the store knew the mats could bunch up, buckle, flip, or otherwise create a tripping hazard, thus creating an unreasonable risk of harm to Menard customers.

As the Laurays explain, notice can be established under the "recurring dangerous condition" theory. The recurring dangerous condition theory is illustrated by the decision in *St. Mary's Medical Center v. Loomis*, 783 N.E.2d 274 (Ind. Ct. App. 2002). In *Loomis*, a doctor slipped and fell in a hospital pantry. He argued that water on the pantry floor caused his fall, and he presented evidence that water had been on the floor and that the back of his scrubs were wet after the fall. *Id.* at 281. The hospital argued it had no notice that the pantry floor was a dangerous condition. *Id.* at 279. Several witnesses testified that no one had fallen in the pantry before. However, twelve employees testified they had seen water or ice occasionally on the pantry floor, and eight employees testified they had slipped in the pantry. *Id.* at 280. The court determined the evidence raised "a reasonable inference that the hospital "knew or should have known about the danger posed by the pantry floor" and therefore, the trial court did not err in denying the Hospital's motion for judgment on the evidence. *Id.* Thus, the hospital was charged with

11

knowledge of the recurring danger created by water and ice on the floor even though the hospital was not found to have had notice of the particular water that caused the doctor to slip and fall.

In applying Indiana law, the Seventh Circuit has held that one can prove constructive notice with evidence "that the specific condition at issue, though transitory, is a part of a known and continuing or recurrent condition." *Hetzel v. Jewel Cos.*, 457 F.2d 527, 530 (7th Cir. 1972) (concluding jury could have properly found "that the liquid on the floor in front of the meat counter was a recurrence of the condition of accumulations of liquid matter at that location and that the defendant had actual notice of the recurring condition"). The court explained that "a storekeeper who knows of the existence of a recurrent condition which poses a potential danger to invitees may not ignore that knowledge and fail reasonably to respond to the foreseeable danger posed by the likelihood of recurrence." *Id.* Thus, in some cases, knowledge of the specific injury-causing condition is unnecessary to hold a defendant liable for negligence; "actual notice of a recurring dangerous condition which is left uncorrected is sufficient under Indiana law upon the recurrence of the condition to justify a finding of liability against a defendant whose duty it was to protect against the danger." *Id.* at 531.

Other decisions confirm that the recurring dangerous condition theory is recognized under Indiana law. *See, e.g.*, *Irak v. Wal-Mart Stores East, LP*, Civil No. 2:10cv241, 2011 WL 3568133, at *2 (N.D. Ind. Aug. 12, 2011) (recognizing theory but concluding the facts of the case did not support it); *Wiles v. Mahan*, 405 N.E.2d

12

591, 593 (Ind. Ct. App. 1980) (holding court did not err by instructing the jury that "the owner had a duty to correct recurrent conditions of danger on his property"); *cf. Barrios v. Fashion Gallery, Inc.*, 255 F. Supp. 3d 728, 732 (N.D. Ill. 2017) (noting that a loose floor mat, like a rusty nail, a spill, or standing water was "something with the apparent potential to cause trouble").

Here, a reasonable trier of fact could find that Menard had actual notice of a recurring dangerous condition involving the mats. The evidence shows that Menard's employees knew that the mats tended to bunch up, buckle, flip, or otherwise create a tripping hazard when customers moved carts over them and even when customers without carts walked over the mats. Ms. Reimer agreed that it was "general knowledge" that the mats could pull up as the carts were going over them, even though it "wasn't something that occurred often." (Dkt. 62-1 at ECF pp. 10–11, Reimer Dep. at 30, 34). Before Ms. Lauray's fall, Ms. Reimer had seen carts bunch up the mats (Dkt. 64-4 at ECF p. 2, Reimer Dep. 32), and she had seen the mats buckle, sometimes just from people walking over them. (Dkt. 62-1 at ECF pp. 25–26, Reimer Dep. at 82–83). Ms. Reimer also testified that she had seen people other than Ms. Lauray trip or stumble over the mats at the exits. (Dkt. 62-1 at ECF p. 24, Reimer Dep. at 81). Ms. Lear agreed that employees were aware that people could kick the mat, roll over it with a cart, or cause it to move. (Dkt. 62-3 at ECF p. 10, Lear Dep. at 34). In fact, Ms. Reimer and Ms. Lear testified that employees had a duty to watch for the mats at the entrance and exit bunching up, getting caught in the door, or just moving about the floor. (Dkt. 62-1 at ECF pp. 8, 9, Reimer Dep. at

13

28, 29). And if an employee noticed that a mat had bunched or pulled up, he or she was supposed to straighten it back out. (Dkt. 62-1 at ECF p. 19, Reimer Dep. at 67). The employees' knowledge of a potentially dangerous condition on the premises may be imputed to Menard. *See Loomis*, 783 N.E.2d at 279. For these reasons, the evidence would allow a reasonable jury to conclude that Menard had knowledge of the recurring potentially dangerous condition of the mats.

Menard further contends that it used "an abundance of" reasonable care in regard to the mat and therefore cannot be held negligent as a matter of law. As a general rule, the determination of whether a duty has been breached is a question for the trier of fact. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 9 (Ind. 2010); *Sturgis*, 2017 WL 4922734, at *12. Nonetheless, when "the facts are undisputed and lead to a single inference or conclusion," the question of whether a breach of duty has occurred can be decided as a matter of law. *Sturgis*, 2017 WL 4922734, at *12. But, as with the vast majority of cases, breach cannot be decided as a matter of law here.

The court makes a few observations in further explanation. First, as Chief Judge Magnus-Stinson noted in *Sturgis*, "[t]he comparative knowledge of a possessor of land and an invitee regarding known or obvious dangers may properly be taken into consideration in determining whether the possessor breached the duty of reasonable care under Sections 343 and 343A of the Restatement (Second) of Torts." *Id.* Second, evidence that the premises owner had knowledge of a dangerous condition can alone support a finding that the owner failed to exercise reasonable care. *Loomis*, 783 N.E.2d at 280–81 ("The Hospital's failure to act even

14

though it had notice of the dangers of the … pantry is sufficient to support the jury's finding that the Hospital failed to exercise reasonable care."); *F.W. Woolworth Co. v. Moore*, 48 N.E.2d 644, 646 (Ind. 1943) (testimony about defective metal strip on step created a reasonable inference that Woolworth's knew about the dangerous condition of the step and that inference could support a finding that Woolworth's failed to exercise reasonable care in failing to repair the step). As noted above, the record contains evidence that Menard's employees knew the mats tended to bunch up, buckle, flip, or otherwise create a tripping hazard when customers moved carts over them, and even when customers without carts walked over the mats. Thus, the evidence could support a finding that Menard had knowledge of the potentially dangerous condition of the mat, and there is no evidence to suggest that Ms. Lauray had any such knowledge.

In addition, although Menard's employees kept a lookout for the mats bunching, buckling, and the like, and straightened out the mats when they saw it was necessary, there is no evidence that Menard took any other steps to correct the condition of the mats. For example, Menard did not secure, duct tape, or otherwise fasten the mats to the floor.[1] (See Dkt. 62-1 at ECF p. 19, Reimer Dep. at 67). Nor did Menard warn customers that the mats could bunch and buckle. The court is not suggesting here that Menard had a duty to take these precautions; it simply points

---

[1] In opposing summary judgment, the plaintiffs submitted the American Society for Testing and Materials Standard for Safe Walking Surfaces. (Dkt. 62-5). The defendant objects to the exhibit's admissibility. The court need not and does not rely on the standard in reaching its decision on summary judgment, so the court does not address the evidentiary issues at this time.

out that a reasonable jury could decide that Menard did not do enough, just as it could reasonably find that it did do enough under the circumstances. Viewing the facts in the light most favorable to the Laurays and drawing all reasonable inferences from the evidence in their favor, the court finds the record presents a genuine issue of fact on the question whether Menard breached its duty of reasonable care to Ms. Lauray.

Last, Menard argues that Mr. Lauray's actions were the proximate cause of his wife's fall. "An act or omission is said to be a proximate cause of an injury if the resulting injury was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission." *Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 600 (Ind. 2006). Menard overlooks that an injury can have multiple proximate causes, "and a party's negligence need only be one of the proximate causes in order to establish liability." *Bradd v. United States*, No. 2:14-cv-00177-JMS-DKL, 2016 WL 3541551, at *6 (S.D. Ind. June 29, 2016) (citing *Funston*, 853 N.E.2d at 146). And even when there is an independent, intervening act, the original wrongdoer may be held liable "'[i]f harm is the natural, probable, and foreseeable consequence of'" his or her negligence. *Havert v. Caldwell,* 452 N.E.2d 154, 159 (Ind. 1983) (quoting 21 I.L.E. *Negligence* § 67, at 330–33 (1959)).

Proximate cause is generally a question of fact. *See Estate of Mintz v. Conn. Gen. Life Ins. Co.*, 905 N.E.2d 994, 1000 (Ind. 2009). However, "where only a single conclusion can be drawn from the facts," proximate cause is a question of law that may be decided on summary judgment. *Marlow v. Better Bars, Inc., 45 N.E.3d*

1266, 1275 (Ind. Ct. App. 2015) (quoting *Fast Eddie's v. Hall,* 688 N.E.2d 1270, 1274 (Ind. Ct. App. 1997), *trans. denied.*

Menard submits that in this case only a single conclusion can be drawn from the facts, that is, if Ms. Lauray tripped on the mat, she did so only because of her husband's actions. However, a trier of fact could find that it was reasonably foreseeable from the recurring condition of the mats to bunch up from normal foot and cart traffic that the particular mat at issue could bunch up, trip a shopper, and cause injury. Even if Mr. Lauray's act of pushing the cart caused the mat to turn up, a trier of fact could find Menard's liable for Ms. Lauray's injuries because Ms. Lauray's fall and resulting injuries are the natural, probable, and foreseeable consequence of Menard's own negligence, if any, with regard to the mat.

## Conclusion

For the foregoing reasons, the court DENIES Menard's motion for summary judgment (Dkt. 35). By a separate order, this case will be set for a telephone conference for purposes of scheduling a trial date and associated deadlines.

Date: 3/1/2018

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system